UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>YURI CHACHANKO,<br><br>Defendant. | 5:06-CR-50117<br><br>ORDER DENYING MOTION FOR<br>SENTENCING REDUCTION |

Pending before the court is defendant, Yuri Chachanko's, compassionate release motion. Docket 324. After carefully considering Chachanko's *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Federal Public Defender's supplement and other filings in support of Chachanko's motion, the Government's opposition, and the additional briefing this court ordered, the court issues the following order. *See* Docket 324; Docket 337; Docket 340; Docket 343; Docket 344; Docket 347; Docket 348; Docket 349; Docket 350.

## BACKGROUND

On June 5, 2004, Chachanko and an accomplice committed the instant offense on which his challenged sentence is based: a robbery in Rapid City, South Dakota. *See* PSR ¶¶ 5-8; *see also* Docket 1 (showing Count 2 stemming from this robbery); Docket 297 at 1 (showing Chachanko convicted of Count 2). On December 13, 2006, the Government charged Chachanko with numerous counts stemming from a series of armed robberies in South Dakota that

occurred in June and July of 2004. *See* Docket 1. Chachanko eventually pleaded guilty to Count 2. Docket 1; Docket 296 at 1. Count 2 charged Chachanko with using and carrying a firearm during a violent felony, in violation of 18 U.S.C. § 924(c). Docket 1. On July 10, 2008, the court sentenced Chachanko to 300 months in custody and 5 years of supervised release. Docket 296; Docket 297 at 2-3. The court imposed this sentence to run consecutively to a sentence previously imposed by the District Court for the District of Montana. *See* Docket 297 at 2; Docket 336 at 331–32.

Chachanko's sentence from the District of Montana stemmed from his participation in a string of armed robberies throughout South Dakota and Montana that led to his arrest in Montana on August 1, 2004. *See* PSR ¶¶ 11-12, 20-23. For ease of discussion, the court refers to these robberies as his "Montana offenses" (even though the court recognizes some of the offense conduct occurred in South Dakota). Chachanko sustained three convictions arising from his Montana offenses: conspiracy to affect interstate commerce by robbery, interference with interstate commerce, and using a firearm during a crime of violence. *See* PSR ¶ 30. On May 19, 2006, the District Court in the District Montana sentenced Chachanko to 219 months in custody. *See id.*

Based on the 219-month sentence (for his Montana offenses) and this court's 300-month sentence (for his June 4, 2004 instant offense), Chachanko's total sentence is 519 months. *See id.*; Docket 297 at 2-3. Chachanko's projected release date is June 28, 2043. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 2, 2024)

(enter BOP register number 08768-046). Chachanko is incarcerated at the Federal Correctional Institution, Oakdale II (FCI Oakdale II), a low security federal correctional institution with an adjacent minimum security satellite camp. *See id.*; *FCI Oakdale II*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/oad/ (last visited July 2, 2024). As of July 2, 2024, the total population at FCI Oakdale II is 1,165 persons. *Id.*

**DISCUSSION**

## I.   Compassionate Release Background

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C § 3582(c). One narrow exception is the First Step Act (FSA), passed by Congress in 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. *Id.* Compassionate release allows defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must consider the Section § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Consistent with Congress's directive, the Sentencing Commission's policy statement on compassionate release requires that "extraordinary and

compelling reasons" warrant a sentence reduction and that the defendant not pose a danger to the public. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(a)–(b). The Commission amended the policy statement on November 1, 2023, to reflect the FSA's empowerment of federal courts to adjudicate defendant-initiated motions for compassionate release. U.S.S.G. § 1B.13, amend. 814. Amendment 814 to the Sentencing Commission policy statement also expanded the list of extraordinary and compelling reasons justifying compassionate release from federal detention. *See id.; 2023 Amendments in Brief*, U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited Jan. 12, 2024).

The 2023 amended Guideline identifies six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G. § 1B1.13(b)(1)-(4), amend. 814. The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The Commission also issued a sixth category that applies to defendants who received a usually long sentence and have served at least ten years in custody, when a change in law other than a nonretroactive amendment to the guideline

4

manual would produce a gross disparity between that sentence and the sentence likely to be imposed today. U.S.S.G. § 1B1.13(b)(6). Consistent with Congress's directive, the Guidelines provide that rehabilitation of the defendant is not an extraordinary and compelling reason but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. *See* U.S.S.G. § 1B1.13(d).

In deciding Chachanko's motion, the court organizes its order in two major sections: (1) whether Chachanko has exhausted his administrative remedies; and (2) whether Chachanko has met his burden to show he faces an "extraordinary and compelling" circumstance justifying compassionate release under § 3582(c)(1)(A).

## II.   Administrative Exhaustion

Before the FSA's passage, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. *See* 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Chachanko submitted a request for compassionate release to the warden of Federal Correctional Institution, Otisville on February 6, 2023. Docket 324-1

at 2. Chachanko filed his current motion for compassionate release over one month later on March 30, 2023. Docket 324. He later submitted another request to the warden of FCI Oakdale II on November 3, 2023. Docket 336 at 346. Chachanko thus appears to have exhausted his administrative remedies. Regardless, the government does not challenge Chahanko's motion on the grounds of a failure to exhaust and has thereby waived the issue. Docket 340 at 2; *see also United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021) (characterizing 18 U.S.C. § 3582(c)(1)(A)'s procedural requirements as "mandatory claim-processing rule[s]" that "must be enforced *so long as the opposing party properly raises it.*" (emphasis added)); *see also United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) ("Not a jurisdictional limitation, § 3582(c)(1)(A)'s exhaustion requirement is a 'claim-processing rule[]' and accordingly 'may be waived or forfeited' by the government." (quotation omitted)). Thus, the court will review Chachanko's motion on the merits.

### III.   Whether Chachanko Can Show an "Extraordinary and Compelling" Circumstance Warrants a Sentence Reduction

Chachanko argues that he faces an "extraordinary and compelling" circumstance warranting compassionate release for multiple reasons. *See generally* Docket 324; Docket 337. First, Chachanko points to his medical circumstances. Docket 324 at 22-23; Docket 337 at 9. Second, Chachanko argues that he received an unusually long sentence and that a change in law has produced a gross disparity between that sentence and the sentence likely to be imposed were he sentenced at the time he filed his instant motion. Docket 324 at 12; Docket 337 at 12-15. Third, Chachanko highlights his father's

terminal illness. Docket 324 at 20-21. Fourth, Chachanko notes his young age at the time of his offense and the fact that he now has spent the majority of his life incarcerated. Docket 324 at 15-18, 20. And fifth, Chachanko points to his efforts at rehabilitation. *See* Docket 324 at 18-19; Docket 337 at 18-23. The court addresses these arguments slightly out of order. The court begins with Chachanko's arguments about his medical and family circumstances, then discusses his arguments about his unusually long sentence and the non-retroactive change in law, including Chachanko's individual characteristics, youthful offender status, and rehabilitation.

### A. Medical Circumstances

The guidelines identify four situations in which the medical circumstances of the defendant constitute an extraordinary and compelling reason for early release. The subcategories of medical circumstances warranting early release are: (1), where the defendant has a terminal illness, U.S.S.G. § 1B1.13(b)(1)(A); (2) where the defendant suffers from a serious physical or mental condition that substantially diminishes the defendant's ability to provide self-care within the correctional facility, U.S.S.G. § 1B1.13(b)(1)(B); (3), where the defendant has a condition that requires long-term or specialized care that is not being provided and without which the defendant's health may seriously deteriorate, U.S.S.G. § 1B1.13(b)(1)(C); and (4) where the defendant is in a correctional facility at imminent risk of a public health emergency or outbreak of infectious disease, the defendant is especially

at risk, and that risk cannot be adequately and timely mitigated, U.S.S.G. § 1B1.13(b)(1)(D).

### 1. Terminal Illness

Terminal illness, or a "serious and advanced illness with an end-of-life trajectory[,]" is an extraordinary and compelling reason for early release. U.S.S.G. § 1B1.13(b)(1)(A). "A specific prognosis of life expectancy . . . is not required." *Id.* Chachanko does not allege that any of his health problems are terminal illnesses. *See* Docket 324 at 21–23; Docket 337 at 9–12; Docket 343 at 1–2. The record also does not support that Chachanko is on an end-of-life trajectory. *See generally* Docket 336 at 1–338. Thus, the terminal illness category does not apply to Chachanko.

### 2. Substantially Diminished Ability to Provide Self-care

An extraordinary and compelling reason for early release exists where due to a serious medical condition, cognitive impairment, or aging, the defendant presents with a substantially diminished ability "to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13(b)(1)(B). Where a defendant can complete the tasks of daily living, courts have found that defendants are able to provide self-care and that early release is not appropriate. *See United States v. Korn*, 2020 WL 1808213, *6 (W.D.N.Y. Apr. 9, 2020) (noting that because defendant was "able to walk with a cane, dress, bathe, eat, and perform . . . activities of daily living independently[,]" his medical condition did not substantially diminish his ability to provide self-care); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 682 (N.D. Cal. 2019)

(denying motion for compassionate release in part because defendant was capable of independently completing activities of daily living); *c.f.*, *United States v. Campagna*, 612 F. Supp. 3d 365, 369 (S.D.N.Y. 2020) (citing *United States v. Gotti*, 433 F. Supp. 3d 613, 619–20 (S.D.N.Y. 2020)) ("[C]ourts have interpreted a diminished ability to provide self-care as equating to confinement to a bed or an equivalent inability to be independent in the activities of daily living pursuant to the BOP's guidance."); *United States v. Bellamy*, 2019 WL 3340699, *3 (D. Minn. July 25, 2019).

Chachanko's health conditions fall under two categories. First, Chachanko has suffered several health problems stemming from two serious falls Chachanko endured in 2021. *See* Docket 324 at 22-23; Docket 337 at 9-11; Docket 336 at 150–51, 208–216, 234. Second, Chachanko experiences several mental health struggles, including depression and anxiety. Docket 337 at 11. The court addresses both.

Starting with the health problems associated with Chachanko's falls, Chachanko's medical records do not support that the after affects from these falls prevent him from providing self-care within the correctional facility. During a checkup on March 6, 2023, Chachanko "denie[d] any pain or medical complaints." Docket 336 at 9–10. While Chachanko reports difficulty opening his jaw, which at times makes eating difficult, this difficulty does not rise to a level of disability "equating to confinement to a bed or an equivalent inability to be independent in the activities of daily living[.]" *See Campagna*, 612 F. Supp. 3d at 369; *see* Docket 324 at 22. Chachanko also reports difficulties with his

vision, but likewise, these difficulties do not impair his ability to provide self-care. *See* Docket 324 at 22. Additionally, as of March 30, 2023, Chachanko was classified as Care Level 1 by the BOP. Docket 336 at 262. According to the BOP guidance, "Care Level 1 inmates are less than 70 years of age and are generally healthy" and "may have limited medical needs that can be easily managed by clinician evaluations every 6–12 months." *Care Level Classification for Medical and Mental Health Conditions or Disabilities*, Bureau of Prisons, at *2 (May 2019),

https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf.

While the court recognizes Chachanko's difficulties with his jaw and vision, his medical records on the whole do not indicate that the aftereffects of his falls have left him unable to complete the tasks of daily living or function independently within the correctional environment. *See generally* Docket 336.

Turning to Chachanko's mental health difficulties, Chachanko's records show that he has been diagnosed with major depressive disorder, anxiety disorder, and bipolar disorder. *See id.* at 4, 8, 244, 273, 280. He has also reported having suicidal thoughts to BOP medical staff. Docket 336 at 13, 277. The court is sympathetic to these concerns. But the record does not show that Chachanko's mental health conditions substantially diminish his ability to provide self-care in the correctional facility, and thus his mental health challenges do not warrant compassionate release. *See United States v. Balster*, 16-CR-50078, 2023 WL 2274366, at *3 (D.S.D. Feb. 28, 2023) (denying motion for compassionate release made by defendant with autism spectrum disorder,

10

anxiety, depression, and other mental health concerns, because the defendant failed to establish that they substantially diminished his ability to provide self-care). Additionally, Chachanko is listed as a Care Level 2 for mental health needs. *See* Docket 336 at 262. The BOP Guidance explains that Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months" whose "medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring." *Care Level Classification for Medical and Mental Health Conditions or Disabilities*, Bureau of Prisons, at *2 (May 2019),

https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf. Thus, Chachanko's mental conditions do not rise to level of substantially preventing Chachnko from exercising self-care.

In summary, Chachanko has not met his burden to show that his medical conditions substantially limit his ability to provide self-care within the correctional facility. *See generally* Docket 336. Thus, Chachanko has failed to show that this category for relief applies to him.

### 3. Long-term or Specialized Medical Care That is Not Being Provided and Without Which the Defendant is at Risk of Serious Deterioration or Death

Previously there existed no defined subcategory of medical circumstances justifying compassionate release for situations where necessary medical care is not being provided by the BOP. U.S.S.G. § 1B.13, amend. 814. The updated guidelines define as an extraordinary and compelling reason circumstances where "[t]he defendant is suffering from a medical condition that requires long-

term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C), amend. 814. Where courts have granted compassionate release due to shortcomings in medical care provided by the BOP, the defendant has typically suffered from an urgent or life-threatening condition. *See, e.g.*, *United States v. Derentz*, 608 F.3d 189, 193-94 (E.D. Pa. 2022) (compassionate release granted to defendant who suffered partial blindness as a result of month-long delay in urgently needed treatment after being diagnosed with a retina tear and eye hemorrhage); *United States v. Beck*, 425 F. Supp. 3d 573, 580-01 (M.D.N.C. 2019) ("grossly inadequate treatment" of defendant's invasive breast cancer warranted compassionate release). *Cf.* *United States v. Rodriguez*, 424 F. Supp. 3d 674, 683 (N.D. Cal. 2019) (holding that compassionate release not warranted where BOP "mishandled [the defendant's] case in an extraordinary way," but began providing necessary care while defendant's motion for compassionate release was pending).

Chachanko raises several concerns about his medical care. In particular, he asserts that he is not being provided vision and dental care for problems stemming from his two falls. Docket 324 at 22–23. Regarding his vision, Chachanko was seen by an ophthalmologist following his first fall. The ophthalmologist noted at that time that the floaters and flashes of light in Chachanko's vision had resolved. Docket 336 at 222–23. Chachanko was advised to immediately follow up if he developed a "shower of floaters, flashes, or curtain in [his] vision." *Id.* He was also advised to return for a checkup in a

12

year. *Id.* Chachanko appears to be overdue for a checkup with the ophthalmologist based on the notes from his last visit. *See id.* But currently, it does not appear that without that visit Chachanko is at risk of serious medical deterioration or death.

Turning to his dental problems, Chachanko also asserts that he has been unable to see a dentist for problems with his jaw stemming from the falls. Docket 324 at 22–23. It appears that Chachanko has not visited a dentist since January of 2020. *See* Docket 336 at 250. Chachanko thus appears to be overdue for dental treatment. But Chachanko's motion and his medical records do not show that this lack of dental care is so dangerous as to create a risk of serious deterioration or death. *See generally* Docket 336. Thus, Chachanko has not met his burden to show he qualifies under the inadequate medical care and serious risk of deterioration or death route for extraordinary and compelling circumstances.

### 4. Ongoing Outbreak of Infectious Disease or Public Health Emergency Where the Defendant is Especially at Risk and the Risk Cannot Be Adequately Mitigated

Under the amended sentencing guidelines, an extraordinary and compelling reason for compassionate release exists where (1) the defendant is housed at a correctional facility at imminent risk of an ongoing outbreak of infectious disease or public health emergency, (2) the defendant is especially at risk, and (3) such risk cannot be adequately mitigated in a timely manner. U.S.S.G. § 1B1.13(b)(1)(D).

At this point, the risk of an imminent outbreak of COVID-19 has lessened as compared to the early days of the pandemic. As of June 28, 2024, the BOP reported approximately 60 open COVID-19 cases across their institutions. *See Inmate COVID-19 Data*, Fed. Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited July 2, 2024). The federal government has declared an end to the Federal COVID-19 Public Health Emergency (PHE) Declaration. *End of the Federal COVID-19 Public Health Emergency*, Ctrs. for Disease Control & Prevention, https://archive.cdc.gov/#/details?url=http://www/cdc/gov/coronavirus/2019-ncov/your-health/end-of-phe.html (last updated Sept. 12, 2023). Nonetheless, the court recognizes that seasonal elevations of COVID-19 infection occur. *See CDC Continues to Track the Growth of JN.1*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/respiratory-viruses/whats-new/JN.1-update-2023-12-22.html (last updated Dec. 22, 2023). But the court does not find that this seasonal elevation in COVID-19 infections qualifies as an imminent risk of an ongoing outbreak of infectious disease or public health emergency.

Even if there were an imminent risk of outbreak or public health emergency, Chachanko's circumstances do not present an extraordinary and compelling reason because his risk of serious complications from COVID-19 is adequately mitigated. COVID-19 poses a particular risk for individuals with certain existing health conditions. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated April 15, 2024). For its part, the government concedes that Chachanko suffers from conditions that increase his risk for severe complications from COVID-19. *See* Docket 340 at 5-6. These conditions include his mental health conditions, alcohol use disorder, and possibly a latent tuberculosis condition. *See id.*; Docket 336 at 52, 70-71. Although Chachanko may be at greater risk due to his health conditions, he has been vaccinated for COVID-19 at least twice. Docket 336 at 41. While "[t]he protection against infection tends to be modest and sometimes short-lived," vaccines nonetheless "provide sustained protection against severe disease and death[.]" *5 Things You Should Know About COVID-19 Vaccines*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/respiratory-viruses/whats-new/5-things-you-should-know.html (emphasis omitted) (last updated Oct. 13, 2023). Chachanko's risk is not as great as it would be without the protective factor of vaccination. Thus, the court finds that Chachanko has not met his burden to show an extraordinary and compelling reason for compassionate release exists due to the COVID-19 pandemic.

In short, the court finds that Chachanko is not suffering from a terminal illness, his medical problems do not substantially diminish his ability to provide self-care, he is receiving sufficient medical care, and COVID-19 does not at this time present a risk to Chachanko that cannot be adequately and timely mitigated. Considering the above, the court finds that Chachanko's

medical circumstances do not clear the high bar necessary to warrant compassionate release under § 3582(c)(1)(A) and § 1B1.13(b)(1).

### B. Family Circumstances

Chachanko argues that his father's illness with cancer supports compassionate release. *See* Docket 324 at 20–21. The guidelines identify four situations in which the family circumstances of the defendant constitute an extraordinary and compelling reason. The subcategories of family circumstances warranting compassionate release are: first, "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self care because of . . . disability or a medical condition." U.S.S.G. § 1B1.13(b)(3)(A).  Second, "the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13(b)(3)(B). Third, "the incapacitation of the defendant's parent or registered partner when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). Fourth, when the defendant is the only available caregiver for any other immediate family member or similar individual. U.S.S.G. § 1B1.13(b)(3)(D). Other courts have relied on the BOP program statement to determine that "incapacitation" requires that the family member have suffered a severe injury or illness, leaving them incapable of acting as a caregiver. *See United States v. Delgado*, 2023 WL 4552890, at *2 (M.D. Pa. July 14, 2023); *United States v. Greer*, 2021 WL 2651089, at *2 (E.D. Tex. June 28, 2021); Fed. Bureau of Prisons, *Program*

*Statement 5050.50*, at 10 (2019),

https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited Mar. 26,

2023).

Chachanko's father's illness does not fall into any of the subcategories of

§ 1B1.13(b)(3). If Chachanko were his father's only possible caregiver, then his

circumstances could fall within § 1B1.13(b)(3)(C). But Chachanko only asserts

that he wishes to spend time with his father during his father's final days. *See*

Docket 324 at 20-21. While the court is sympathetic to Chachanko's family

circumstances, they do not independently constitute an extraordinary and

compelling reason for compassionate release under § 1B1.13(b)(3).

### C. Unusually Long Sentence Under § 1B1.13(b)(6)

The court now turns to Chachanko's argument that pursuant to

§ 1B1.13(b)(6), he is serving an unusually long sentence that, due to a change

in law, is grossly disparate compared to the one he would have received had he

been sentenced when he filed this motion. U.S.S.G. § 1B1.13(b)(6) provides:

> Unusually Long Sentence.--
>
> If a defendant received an unusually long sentence and has served
> at least 10 years of the term of imprisonment, a change in the law
> (other than an amendment to the Guidelines Manual that has not
> been made retroactive) may be considered in determining whether
> the defendant presents an extraordinary and compelling reason, but
> only where such change would produce a gross disparity between
> the sentence being served and the sentence likely to be imposed at
> the time the motion is filed, and after full consideration of the
> defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

To determine whether Chachanko qualifies for relief under
§ 1B1.13(b)(6), the court makes three determinations: (a) whether Chachanko
can show a change in law that produces a gross disparity between the sentence
he is currently serving and the sentence he likely would have received had he
been sentenced at the time he filed his motion; (b), whether his individual
circumstances support relief; and (c), whether the 300-month sentence this
court imposed on Chachanko is unusually long and whether Chachanko has
served at least ten years of such term of imprisonment. *See* U.S.S.G.
§ 1B1.13(b)(6).

### a. Gross Disparity

Section 1B1.13(b)(6) requires that a non-retroactive change in law
produced "a gross disparity between the sentence being served and the
sentence likely to be imposed at the time the motion is filed." In determining
whether Chachanko can make this showing, the court first compares the
mandatory minimum Chachanko faced at the time he was sentenced with the
mandatory minimum he would face if sentenced at the time he made his
motion. *See, e.g.*, *United States v. Baylor*, 2024 WL 3093573, at *10-11 (E.D.
Va. June 20, 2024) (doing same). Second, the court compares the guideline
range he should have received at the time he was sentenced with the guideline
range he would have received at the time he made his motion. *See id.* Third,
the court determines whether these comparisons show a "gross disparity"
between the mandatory minimum sentences and guideline ranges.

18

The court begins with the mandatory minimums. On July 10, 2008, Chachanko pleaded guilty to Count 2 of the Indictment, which charged him with Use and Carrying of a Firearm During a Violent Felony, in violation of § 924(c). *See* Docket 296 (change of plea minute notes); Docket 293 (showing Chachanko pleaded guilty to Count 2); Docket 1 (showing Count 2). Chachanko's offense date for this conviction was June 5, 2004. *See* Docket 294 (showing instant offense date of June 5, 2004 in Count 2). At the time Chachanko committed his offense, he had not yet been convicted of any other § 924(c) offense. *See* PSR ¶¶ 28-30. But Chachanko was sentenced on two convictions under § 924(c) in the District of Montana in May of 2006, for crimes he committed after his instant offense but before he was sentenced in South Dakota. *See id.* ¶ 30 (showing Chachanko was arrested in Montana in August 2004 and later sentenced in May 2006).

At the time this court sentenced Chachanko, his lack of final convictions from the District of Montana prior to his offense date in this instant case did not matter. That is so because when the court sentenced Chachanko in July 2008, the relevant sentencing provision provided that any "second or subsequent conviction under [§ 924(c)]" was subject to a mandatory minimum of 25 years, even if the first § 924(c) conviction had not become final until after the individual had committed the offense for which he was being sentenced. *See* 18 U.S.C. § 924(c)(1)(C) (2006); *Deal v. United States*, 508 U.S. 129, 135-36 (1992) (interpreting "second or subsequent conviction" to mean that 25-year mandatory minimum sentence attached when defendant was convicted of

multiple 924(c) counts in same proceeding). Because Chachanko's two other § 924(c) convictions from the District of Montana had been final in May 2006— prior to his South Dakota sentencing on July 2008—the then-operative § 924(c)(1)(C) required the court to apply a 25-year mandatory minimum. *See* 18 U.S.C. § 924(c)(1)(C) (2006). The court did so, and sentenced him to 25 years. Docket 297 at 2.

Chachanko's fate would have been dramatically different had he been sentenced at the time he filed his compassionate release motion. In 2018, Congress passed the First Step Act. This Act, in relevant part, amended § 924(c) by eliminating the phrase, "second or subsequent conviction under this subsection," and instead inserted the phrase, "violation of this subsection that occurs after a prior conviction under this subsection has become final." *See* § 924(c)(1)(C); *see also* First Step Act of 2018, S. 756, 115th Cong. § 403 (2018). This change "means that a defendant would, in a general sense, have to be a repeat offender with a prior, final conviction to be eligible for the mandatory enhancement." *United States v. Richardson*, 948 F.3d 733, 746 (6th Cir. 2020); *see also United States v. Davis*, 19 F.4th 1083, 1085 (8th Cir. 2021).

After the First Step Act, the crucial time period in determining whether someone has a previous final § 924(c) conviction is not at the time an individual is *sentenced* for the instant offense, but instead at the time the individual *committed* the offense. *See* § 924(c)(1)(C). Because Chachanko *committed* the instant South Dakota offense before his convictions under § 924(c) in the District of Montana became *final*, under current law,

Chachanko's District of South Dakota conviction would not be subject to the 25-year mandatory minimum found at § 924(c)(1)(C). Rather, Chachanko would be subject to the 10-year mandatory minimum found at § 924(c)(1)(B)(i) because he pleaded guilty to carrying, using, and brandishing a short-barreled shotgun less than 18 inches in length. *See* Docket 1 (showing Count 2 charged Chachanko with using, carrying, and brandishing a 12-inch 12-gauge shotgun and rifle); Docket 294 (specifying in the factual basis statement that Chachanko entered a casino with a 12-guage shot gun with a barrel length of 12 inches); Docket 297 (showing guilty plea to Count 2); 18 U.S.C. § 924(c)(1)(B)(i) (providing 10-year mandatory minimum for person convicted of firearm offense if gun possessed was a short-barreled shotgun); 18 U.S.C. § 921(a)(6)(defining "short-barreled shotgun" to mean a shotgun with one or more barrels less than eighteen inches in length). Thus, if Chachanko was sentenced today, the applicable mandatory minimum would be 10 years, a sentence 15 years shorter than the one he is currently serving.

Next, the court considers whether Chachanko's guideline range would be different if he was sentenced at the time of his motion. In 2008, Chachanko's guideline range was calculated at 300 to 327 months. *See* PSR ¶ 56. This range was based on his categorization as a Career Offender under § 4B1.1(c), a three-level reduction for Acceptance of Responsibility, and his mandatory minimum sentence, which raised what would have been the 262-month low end of the guideline range to 300 months. *See id.* ¶ 31, 56.

21

The Government argues that Chachanko's status as a career offender—
both when the court sentenced him in 2008 and at the time Chachanko filed
his compassionate release motion—makes it such that Chachanko cannot
show a gross disparity between his guideline ranges. *See* Docket 340 at 35.
Specifically, the Government argues that the only change in Chachanko's
guideline range, after the First Step Act, would be the bottom end of the
guideline: rather than being 300 months due to the 25-year mandatory
minimum, the bottom end of the current guideline range would be 262 months.
*See id.* Because the court sentenced Chachanko to 300 months in custody and
because this sentence falls "squarely in the heart of the Guidelines range
applicable today," the Government argues Chachanko cannot show a gross
disparity between the sentence he received in 2008 and the sentence he would
likely have received at the time he filed his motion. *See id.* at 35-36.

Under the sentencing guidelines in effect today, a defendant qualifies as
a career offender if the offender meets the following criterion:

> (1) the defendant was at least eighteen years old at the time the
> defendant committed the instant offense of conviction; (2) the
> instant offense of conviction is a felony that is either a crime of
> violence or a controlled substance offense; and (3) the defendant has
> at least two prior felony convictions of either a crime of violence or a
> controlled substance offense.

U.S.S.G. § 4B1.1(a). The term "two prior felony convictions," is defined as
follows:

> The term "two prior felony convictions" means (1) the defendant
> committed the instant offense of conviction subsequent to
> sustaining at least two felony convictions of either a crime of violence
> or a controlled substance offense (i.e., two felony convictions of a
> crime of violence, two felony convictions of a controlled substance

> offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

U.S.S.G. § 4B1.2(c). On June 5, 2004, the date that Chachanko committed the offense from which he is currently seeking relief, he had only "sustained" a single adult criminal conviction for a crime of violence,[2] for the robbery he committed in 1997. *See* PSR ¶¶ 5, 28–30. The court would not consider the offenses committed during Chachanko's crime spree in the District of Montana, because Chachanko's guilt had not been established for those offenses at the time he committed his instant South Dakota offense on June 5, 2004. *See* PSR ¶¶ 5, 29–31; U.S.S.G. § 4B1.1(2)(c). Thus, Chachanko would not be sentenced under the Career Offender table at U.S.S.G. § 4B1.1(c)(3). Where a defendant convicted under 18 U.S.C. § 924(c) is not a career offender, "the guideline sentence is the minimum term of imprisonment required by statute." U.S.S.G. § 2K2.4(b).[3] Today, the guideline range for Chachanko's § 924(c) conviction in the District of South Dakota would only be 120 months, the mandatory minimum for his offense, which is significantly lower than the guideline range he received in 2008 (300-327 months), and 180 months less than the sentence he received. *See* 18 U.S.C. § 924(c)(1)(B)(i); U.S.S.G. § 2K2.4(b); PSR ¶ 56.

---

[2] Like Chachanko, the court assumes without deciding that his 1997 robbery counts as a crime of violence. *See* Docket 343 at 4-5.

[3] Because Chachanko faced a 25-year mandatory minimum back in 2008, his guideline range then was 300 months. *See* U.S.S.G. § 2K2.4(b)(2008).

In short, because of the amendment to § 924(c)(1)(C), Chachanko's mandatory minimum and guideline range under current law are each 10 years in length. At the time the court sentenced Chachanko in 2008, his mandatory minimum and guideline range were each 25 years. This difference amounts to 15 years. Any honest assessment must lead to the conclusion that a difference of 15 years constitutes a gross disparity: that is 15 years of time an individual can freely spend time with friends, family, and be part of the community, rather than locked in prison. *See United States v. Robinson*, 2024 WL 15577, *3 (D.R.I. Apr. 10, 2024) (finding five years to be a gross disparity "by any humane measure"). The court finds that Chachanko has successfully shown that these differences constitute a "gross disparity" as required under § 1B1.13(b)(6).

### b. Individualized Factors and § 3553(a)

Section 1B1.13(b)(6) also requires the court to "full[]y consider[] [] the defendant's individualized circumstances." The court first notes Chachanko was 22 years old at time he committed his instant offense. *See* PSR at 2-3 (showing birthdate in 1982 and offense date of June 2004). Prior to Amendment 814, some courts considered a defendant's relative youth at the time of the offense in the extraordinary and compelling reasons analysis. *See McCoy*, 981 F.3d at 279 (upholding decision granting compassionate release in which district court considered defendants' "youth and minimal criminal history at the time" of their offenses); *United States v. Razo*, 2023 WL 3231623, at 5, 8-9 (D. Me. May 3, 2023) (considering defendant's youth and finding that because court already weighed relative youth in crafting a below-guidelines

sentence, no extraordinary and compelling reason existed). The court finds that 22 years old is relatively young. While Chachanko's youthful offender status does not independently establish an extraordinary and compelling reason, when considered alongside Chachanko's unusually long sentence, Chachanko's youth at the time of the offense and lifetime of incarceration support the court's finding that extraordinary and compelling reasons for a sentence reduction exist.

Chachanko's rehabilitation also weighs in favor of a sentence reduction. Under the current guidelines and as Congress has instructed, rehabilitation is not an extraordinary and compelling reason for early release, but a court can still consider it in combination with other circumstances to determine whether early release is warranted. *See* U.S.S.G. § 1B1.13(b)(6); 28 U.S.C. § 994(t). As evidence of his rehabilitation, Chachanko points to his relative lack of disciplinary infractions and participation in educational programming while in custody. *See* Docket 324 at 18-19. He also asserts that his previous overvaluation of material things motivated his crimes, and that his value system has changed during his years of incarceration. *See id.* at 15, 18-19; PSR at 11.

Chachanko's remorse for committing his crimes appears genuine, and to be the product of decades of reflection. He expressed dismay at his previous mindset and possesses the insight that his former fantasies of wealth and material status were only delusions that led him to hurt others. *See* Docket 343-1 at 1, 3. Chachanko has participated in a range of classes while in prison

and appears to have availed himself of what opportunities he can. Docket 335
at 328-29. One of his work supervisors while incarcerated in Montana wrote a
letter in support of Chachanko's work ethic and interpersonal skills. Docket
325 at 8. Chachanko has received a number of disciplinary infractions while in
federal custody. *See* Docket 336 at 323-27. But he has had only one violent
disciplinary infraction for fighting with another person in March of 2023, and
maintains that the other violations for refusing work assignments are related to
security concerns. *See id.*; Docket 343 at 15. Chachanko's violent infraction in
2023 is concerning. Nonetheless, Chachanko's overall efforts at rehabilitation
are commendable and support a sentence reduction. *See* U.S.S.G. § 1B1.13(d).

Related to the individual circumstances, the court considers the
§ 3553(a) sentencing factors in determining whether a sentence reduction is
warranted. *See* 18 U.S.C. § 3582(c)(1)(A). The first factor the court must weigh
is "the nature and circumstances of the offense and the history and
characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1). Chachanko
perpetrated a brazen robbery. *See* PSR ¶¶ 5-14. Given the dangerous and
volatile situation created by Chachanko's crime, it is fortunate that no one was
injured or killed. *See id.* ¶¶ 6-7. Moreover, the robbery conviction from which
Chachanko seeks relief was only one of a series of armed robberies. *Id.* ¶¶ 20-
23. Thus, the nature and circumstances of the offense weighs against release.

Chachanko's personal characteristics are more favorable to his motion.
Chachanko was born in the Soviet Union in 1982 and immigrated to the United
States in 1991. *Id.* ¶ 11. He described "instances of violence and mental abuse"

from his father during childhood. *Id.* His mother and sister also submitted letters to describe the challenges Chachanko faced immigrating to the United States, and the strong impact his parents' divorce had on him at a young age. Docket 325 at 9, 14. Chachanko's criminal history began with an assault at the age of 14, progressed to an armed robbery at 15, and culminated in the offenses for which he is currently incarcerated. *See* PSR ¶¶ 9-11. Chachanko also has a history of drug and alcohol abuse and gambling addiction. *Id.* ¶¶ 13-14. But despite his past, Chachanko has made efforts at rehabilitation by participating in educational programming. Docket 336 at 328. While Chachanko's history of violence weighs against release, his rehabilitation during the intervening years and the difficult circumstances of his young life temper that history. The court concludes that Chachanko's personal characteristics do not weigh strongly for or against release.

The next factor the court considers is the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). If the court granted a sentence reduction to ten years consecutive to his Montana sentence, the current mandatory minimum for Chachanko's offense, the objectives of respect for the law and just punishment would be served. While Chachanko's offense is serious, ten years is also a substantial sentence. Thus, granting compassionate release still achieves the objectives of promoting respect for the law and providing just punishment.

The remaining § 3553(a) factors support a sentence reduction as well. If the court were to grant compassionate release, similar conduct in others would still be deterred because Chachanko's punishment would remain severe enough to act as an effective deterrent. *See* 18 U.S.C. § 3553(a)(2)(B). The sentence imposed must also "protect the public from further crimes of the defendant[.]" *See* 18 U.S.C. § 3553(a)(2)(C). If the court were to reduce Chachanko's sentence from 300 months to 120 months, his current guideline range, Chachanko would be released 15 years earlier than his current anticipated release date of June 28, 2043. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 2, 2024). He would thus be around 46 years of age at the time of release, and in an age bracket in which the chance of recidivism begins to decline markedly. *See id; Recidivism & Federal Sentencing Policy*, U.S. Sentencing Comm'n, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/backgrounders/RG-recidivism-overview.pdf.

Chachanko's chance of reoffending is also decreased by the family support that he will have upon release. Both his mother and stepfather have written letters and indicated that he will be able to live with them, and that they will provide financial support for education or counseling while he gets on his feet. *See* Docket 325 at 9-10. Chachanko's younger brother has offered to employ Chachanko at his tree service company in Sioux Falls. *See id.* at 13. Although there is always a chance that a defendant reoffends, Chachanko's

efforts at rehabilitation, remorse regarding his crimes, family support, and age upon release lessen this risk.

In short, the court finds that Chachanko's individual characteristics and § 3553(a) factors collectively support a sentence reduction.

### c. Unusually Long Sentence and Whether Chachanko Has Served at Least 10 years of the Term of Imprisonment

The court addresses the final two requirements under § 1B1.13(b)(6): whether Chachanko's term of imprisonment is "unusually long," and whether he has served at least ten years of the term of imprisonment by the time he filed his motion.

With respect to whether Chachanko is currently serving an unusually long sentence, the court sentenced Chachanko to 300 months in custody, to be served consecutive to any other sentence. *See* Docket 297 at 2. The average term of imprisonment imposed on federal defendants is 145 months, and only 15% of offenders are serving sentences of 20 years or more. *See Federal Offenders in the Federal Bureau of Prisons*, U.S. Sentencing Comm'n, https://www.ussc.gov/research/quick-facts/federal-offenders-prison. Even among § 924(c) offenders, who have an average sentence of 157 months, Chachanko's 300-month sentence for his offense in the District of South Dakota, is unusually long. *See Quick Facts 18 U.S.C. § 924(c) Firearms Offenses*, U.S. Sentencing Comm'n, https://www.ussc.gov/sites/default/files/pdf/research-and-

publications/quick-facts/Section_924c_FY18.pdf. Thus, the court sentenced Chachanko to an unusually long sentence.

The court now turns to whether Chachanko can meet the final requirement under § 1B1.13(b)(6): that Chachanko "has served at least 10 years of the term of imprisonment" by the time he filed his motion. At first glance, Chachanko appears to meet this requirement because he has been in custody for over seventeen years as of November 2023. *See* Docket 336 at 333. But Chachanko's sentence is comprised of two separate sentences from two separate courts at two different times. First, the district court in the District of Montana sentenced Chachanko to 219 months in custody in May 2006. *See id.* at 331-32; PSR ¶ 30. And second, this court sentenced Chachanko to 300 months in custody in November 2008, and explained that "[t]he term of imprisonment by this judgment shall run consecutively to the defendant's imprisonment under any previous state or Federal sentence." Docket 297 at 2; *see also* Docket 296 at 2. Although Chachanko has served over seventeen years (204 months) in custody as of November 2023, *see* Docket 336 at 333, the vast majority of these seventeen years are years Chachanko served on his Montana convictions. Thus, Chachanko has not served at least ten years of this court's 300-month sentence, which is the sentence that Chachanko seeks to reduce. *See* Docket 337 at 12-13 (acknowledging Chachanko has served at least 10 years of his "aggregate" federal sentence).

As a result, the issue here is whether the phrase "of the term of imprisonment" includes time Chachanko served on the Montana sentence. In

making this determination, the court must "interpret the Sentencing Guidelines using the ordinary tools of statutory interpretation." *United States v. Clayborn*, 951 F.3d 937, 939 (8th Cir. 2020) (quoting *United States v. Martinez*, 870 F.3d 1163, 1166 (9th Cir. 2017)). As is the case with statutory interpretation, the court begins with the plain language of the guidelines, considering the guidelines as a whole and giving effect to each part. *United States v. Stimac*, 40 F.4th 876, 880 (8th Cir. 2022). When the plain language of the guidelines is unambiguous, the court need look no further. *United States v. Carter*, 960 F.3d 1007, 1014 (8th Cir. 2020).

The court need not—and indeed cannot—interpret the phrase at issue in a vacuum. Rather, the court must consider the statutory backdrop of the guidelines and interpret such guidelines in light of Congress's enacted words. *Cf. Dorsey v. United States*, 567 U.S. 260, 266 (2012) (explaining that a sentencing statute "trumps" the sentencing guidelines); *United States v. Stoneking*, 60 F.3d 399, 402 (8th Cir. 1995) ("In general, when a statute and a guideline conflict, the statute controls."). The court must also "read the words in a statute in their context and with a view to their place in the overall statutory scheme' because '[the court's] duty, after all, is to construe statutes, not isolated provisions.' " *York v. Wellmark, Inc.*, 965 F.3d 633, 640 (8th Cir. 2020) (cleaned up) (quoting *King v. Burwell*, 576 U.S. 473, 486 (2015)).

Here, the statutory scheme that authorizes compassionate release motions uses the identical phrase "the term of imprisonment." *See* 18 U.S.C. § 3582(c). Section 3582 provides in relevant part:

(c) **Modification of an imposed term of imprisonment**.--The court may not modify a term of imprisonment once it has been imposed except that--

> (1) in any case--

>> (A) the court . . . may reduce *the term of imprisonment* . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>>> (i)     extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c) (emphasis added).

Looking at the statutory scheme from a big picture view, § 3582(c)(1) follows § 3582(a), which in turn directs a sentencing court to consider certain factors when imposing a term of imprisonment in the first instance. *See* 18 U.S.C. § 3582(a). In context, then, because § 3582(a) directs sentencing courts to consider various factors when sentencing in the first instance, it follows that § 3582(c)'s authorization for courts to reduce a "term of imprisonment" authorizes only modifications by the initial sentencing courts, not any court of a petitioner's choosing. *See United States v. Raia*, 954 F.3d 594, 595 (3d. Cir. 2020) ("Section 3582's text requires [§ 3582(c)(1)] motions to be addressed to the sentencing court[.]"); *Bolden v. Ponce*, 2020 WL 2097751, at *2 (C.D. Cal. May 1, 2020) (explaining that "[o]nly the original sentencing court can entertain [§ 3582(c)] requests" and collecting cases holding the same); *Heard v. Quintana*, 184 F.Supp.3d 515, 521 (E.D. K.Y. 2016) ("[B]ecause a compassionate release falls under 18 U.S.C. § 3582 . . .  the process must be undertaken in the court where the prisoner was sentenced."). An alternative rule would allow and incentivize a petitioner to forum shop and search for the most lenient judge.

Thus, § 3582(c)(1)'s authorization that the court may reduce "the term of imprisonment" refers to the term of imprisonment that the sentencing court initially imposed.

In the context of Chachanko's case, § 3582(c)(1) authorizes this court to reduce the sentence that this court originally imposed (i.e. his 25-year mandatory minimum sentence), so long as the other § 3582(c)(1) requirements are met. *See* Docket 297. But as discussed, § 3582(c)(1) does not authorize this court to reduce the sentence that the District of Montana imposed on Chachanko.

With this statutory backdrop in mind, the court returns to the guideline at issue here. The guideline provides in relevant part:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years *of the term of imprisonment*, a change in law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed[.]

U.S.S.G. § 1B1.13(b)(6) (emphasis added). As an initial observation, the phrase "of the term of imprisonment"  in § 1B1.13(b)(6) is identical to the language in § 3582(c)(1). *Compare* 18 U.S.C. § 3582(c)(1)(A) (("the court . . . may reduce *the term of imprisonment*"), *with* U.S.S.G. § 1B1.13(b)(6) (" . . . has served at least 10 years *of the term of imprisonment*"). This identical language weighs heavily—if not dispositively—in favor of the court interpreting § 1B1.13(b)(6) in the same way it interprets § 3582(c)(1)(A). *See, e.g.*, *United States v. Darden*, 915 F.3d 579, 585 (8th Cir. 2019) (explaining that because the phrase "violent felony"

33

under the Armed Career Criminal Act and the phrase "crime of violence" under the Guidelines are nearly identical, the court construes the clauses largely identically); *United States v. McIntosh*, 236 F.3d 968, 971 n. 4 (8th Cir. 2001) (explaining that the court "fail[ed] to see how [a guideline] provision could be interpreted differently than the statute" because "the language is identical"); *Cf. United States v. Cole*, 525 F.3d 656, 659 (8th Cir. 2008) ("It is a principle of statutory interpretation that identical phrases in a statute, particularly when they occur in close proximity, are ordinarily given an identical meaning."). Treating these phrases identically is particularly appropriate here because § 3582(c)(1) is the statute that authorizes sentence reductions in the first instance, and § 1B1.13(b)(6) merely describes which specific circumstances justify such a reduction. *See* 28 U.S.C. § 994(t). Thus, because the phrase "the term of imprisonment" in § 3582(c) refers to the term of imprisonment that the sentencing court initially imposed, the court must assume that § 1B1.13(b)(6) refers to the same. In other words, the requirement that the individual seeking a sentence reduction have served "at least 10 years of the term of imprisonment" requires that petitioners have served at least 10 years *of the sentence the court originally imposed.*

To the extent there was any remaining doubt, surrounding clauses in § 1B1.13(b)(6) confirm this understanding. For example, § 1B1.13(b)(6) makes "receiv[ing] an unusually long sentence" a precondition to showing an "extraordinary and compelling reason." By connecting the phrase "received an unusually long sentence" with the phrase "extraordinary and compelling

reason," the Guideline is incorporating the statutory language found in

§ 3582(c)(1) because the phrase "extraordinary and compelling reason" is the

standard the sentencing court uses to determine whether to grant a sentence

reduction under § 3582(c)(1). This explicit connection to § 3582(c)(1) matters,

because as discussed above, § 3582(c)(1) authorizes only original sentencing

courts—not any court—to reduce the original sentence. Because § 3582(c)(1)

provides the necessary authority for § 1B1.13(b)(6), § 1B1.13(b)(6)'s

requirement that a defendant "received an unusually long sentence" must refer

to the sentence that the defendant received from the court which originally

imposed the sentence subject to the § 3582(c)(1) motion.[4]

This reference necessarily carries over to the phrase at issue here—"has

served at least 10 years of the term of imprisonment." U.S.S.G. § 1B1.13(b)(6).

Tellingly, § 1B1.13(b)(6) explicitly links the phrase "received an unusually long

sentence" with the phrase at issue here—"has served at least 10 years of the

term of imprisonment"—by using the word "and." Specifically, § 1B1.13(b)(6)

reads, "If a defendant received an unusually long sentence *and* has served at

least 10 years of the term of imprisonment, a change in law . . . may be

considered in determining whether the defendant presents an extraordinary

---

[4] Chachanko notes that his " 'unusually long sentence' *is* unusually long because it is an enhanced mandatory minimum sentence required to be served consecutively to the previously imposed sentence." Docket 349 at 2. While factually accurate, Chachanko's observation does not change the fact that this court is the one who imposed Chachanko's 300-month sentence at a separate proceeding compared to the sentence Chachanko received from the District of Montana. For reasons explained throughout this opinion, Chachanko's observation does not alter the text of § 3582(c)(1)(A) or U.S.S.G. § 1B1.13(b)(6).

and compelling reason[.]" Without any textual basis to the contrary, the court sees no reason to treat the requirement that a defendant have received an unusually long sentence with the requirement that they serve at least 10 years of the term of imprisonment. Because the relevant sentence with respect to the requirement that the defendant must have "received an unusually long sentence" is the sentence imposed by the original sentencing court, it follows that the requirement that a defendant must have served "at least 10 years of the term of imprisonment" also refers to the sentence imposed by the original sentencing court.

The last clause of § 1B1.13(b)(6) also supports this reading. Section 1B1.13(b)(6) empowers a court to consider a change in law when "such change would produce a gross disparity between *the sentence being served* and *the sentence likely to be imposed at the time the motion is filed*[.]" (emphasis added). Taking these two comparison clauses in reverse order, the guideline's reference to "the sentence likely to be imposed at the time the motion is filed" squarely references the sentence that *this court* would impose after the new change in law is considered, because as discussed above, only the initial sentencing court has the authority to grant a sentence reduction of the initial sentence. Because the latter clause refers to the sentence imposed by the original sentencing court, the former clause (i.e. the "sentence being served") must also refer to the sentence that the court originally imposed because the guideline explicitly requires the court to compare the two sentences and determine if there is a "gross disparity" between the two.

To conduct this analysis, the court necessarily must compare the sentence it would impose under the change in law with the sentence it did impose before the change in law. In both instances, the relevant sentence is the sentence that *this* court would impose or did in fact impose. In light of this neighboring clause and its focus on the sentences that this court imposes, the court sees no reason to interpret the phrase "the term of imprisonment" any differently. In short, § 1B1.13(b)(6)'s and § 3582(c)(1)'s text both unambiguously point in the same direction: the requirement that Chachanko has served "at least 10 years of the term of imprisonment" refers to the term of imprisonment that Chachanko challenges and that this court imposed (i.e. the 25 mandatory minimum sentence).

Chachanko resists this conclusion and argues that the court should treat Chachanko's two sentences (the 219-month sentence from the District of Montana and the 300-month sentence this court imposed) as one aggregate sentence. *See* Docket 348 at 2-3; Docket 349 at 3-4. This aggregation makes all of the difference, according to Chachanko, because treating his sentences this way means he has undoubtedly served at least 10 years of the term of imprisonment. *See* Docket 348 at 2-3; *see also* Docket 336 at 333 (indicating that, as of November 2023, Chachanko has served seventeen years in custody). To support this aggregation theory, Chachanko primarily relies on two arguments. *See* Docket 348 at 2-5. Neither of them persuade, much less require, the court to alter its interpretation of § 1B1.13(b)(6) and § 3582(c).

First, Chachanko cites 18 U.S.C. § 3584(c), which provides that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." *See* Docket 348 at 2. But this provision expressly applies only for "administrative purposes," such as the Bureau of Prison's decisions to provide inmates with credit towards their sentences for various reasons. *See* 18 U.S.C. § 3584; § 3585 (explaining various circumstances a defendant should be given credit towards sentence); *United States v. Wilson*, 503 U.S. 329, 335 (1992) (explaining that BOP has responsibility to determine the crediting of jail time under § 3585). Here, the court's duty is to determine whether Chachanko qualifies for a sentencing reduction under § 3582(c)(1)(A) (and in turn § 1B1.13(b)(6) of the Guideline). This task is not administrative, but rather judicial because it requires interpreting the statute and determining whether an individual qualifies under such statute. *See United States v. Brow*, 62 F.4th 114, 120 (3d Cir. 2023) ("The BOP's administrative aggregation of [petitioner's] sentence does not affect our judicial authority."); *United States v. Llewlyn*, 879 F.3d 1291, 1295 (11th Cir. 2020) (explaining "judicial decisions under § 3582 do not constitute an 'administrative purpose,' "); *United States v. Martin*, 974 F.3d 124, 136-37 (2d Cir. 2020) ("Section 3584(c) provides no textual support for the position that sentences may be aggregated for the purpose of resentencing[.]"); *United States v. Vaughn*, 806 F.3d 640, 643-44 (1st Cir. 2015) (considering § 3582(c)(2) sentence reduction and holding that "[s]ection 3584 does not support [petitioner's] position because it specifies that aggregation is

38

'for administrative purposes' and the issue at hand is judicial, not administrative"). As a result, § 3584 does not alter the court's analysis.

Second, Chachanko cites various cases in which courts have granted relief under § 1B1.13(b)(6) to defendants who were sentenced to multiple, consecutive sentences (including a stacked sentence under § 924(c)) by the same court, even though the defendants had not yet served ten years of the stacked § 924(c) sentence and even though the defendants sought to reduce the § 924(c) portion of the sentence. *See* Docket 348 at 4. For example, in *United States v. Pierce*, 2024 WL 2219739, *8 (S.D.N.Y. May 15, 2024), *appeal docketed*, No. 24-1660 (2d. Cir. June 24, 2024) (*Pierce I*), the district court originally sentenced the petitioner, Pierce, to a total of 600 months in custody. The court then resentenced Pierce to 540 months. *Id.* His 540-month sentence comprised of the following: 180 months on one set of offenses (set 1), 120 months on one offense (which ran concurrently to set 1), 60 months on one § 924(c) offense and 300 months on a second § 924(c) offense (with the § 924(c) sentences to run consecutively to set 1, the 120-month sentence, and each other). *See Pierce I*, 2024 WL 2219739, at *1, 8; *United States v. Pierce*, 785 F.3d 832, 846-47 (2d. Cir. 2015) (*Pierce II*).

Relying on § 1B1.13(b)(6) and an identical argument to the one Chachanko advances today, Pierce argued that the First Step Act's change in law constituted extraordinary and compelling reasons to warrant a sentence reduction. *See Pierce I*, 2024 WL 2219739, at *7. The court agreed, finding that the new change in law would have resulted in a total of 180 months for Pierce's

two § 924(c) convictions (instead of the combined 360 months he received upon resentencing for such convictions). *See id.* at 8. As a result, the court reduced Pierce's sentences for his § 924(c) convictions to 180 months, meaning it reduced Pierce's overall sentence from 540 months to 360 months. *See id.* at 10.

Importantly for this discussion, by the time the court reduced Pierce's sentence, Pierce had served 12 years and 11 months of his total sentence, meaning that Pierce had likely not yet finished his sentence for his original set of offenses (180) months, and certainly had not yet served ten years of his stacked § 924(c) offenses. *See id.* at *2. Chachanko argues that Pierce's situation is analogous to his own, maintaining "[t]here is no meaningful difference between these cases (where the stacked § 924(c) sentences were imposed in a single case) and [his own] case (where the stacked § 924(c) sentences were imposed in different cases based on conduct that predated both federal prosecutions)." Docket 348 at 4-5; *see also* Docket 349 at 2-3.

While Chachanko's argument has some force, the court finds that the textual analysis discussed above explains the "meaningful difference." As Chachanko acknowledges, the same court in *Pierce I* imposed Pierce's § 924(c) sentences and his other sentences. *See Pierce I*, 2024 WL 2219739, at *1. But here, this court only imposed Chachanko's 300-month sentence, and did not impose the 219-month Montana sentence. *See* PSR ¶ 30; Docket 296 at 2. The fact that the two sentences came from two different courts at two different times is critical because as discussed, the phrase "the term of imprisonment"

40

as used both in § 3582(c)(1) and § 1B1.13(b)(6) refers to the term that *this* court imposed. Thus, *Pierce I* and cases with similar postures do not compel a different result, and are rather consistent with this court's understanding of § 3582(c)(1)(A).

Further bolstering this court's conclusion is the Eighth Circuit's decision in *United States v. Gamble*, 572 F.3d 472, 474 (8th Cir. 2009). There, the petitioner, Gamble, pleaded guilty to conspiracy to possess with the intent to distribute crack cocaine, and the district court sentenced Gamble to 60 months imprisonment. *See Gamble*, 572 F.3d at 473. While incarcerated, Gamble then pleaded guilty to two separate offenses (conspiracy to distribute marijuana and conspiracy to money launder), and the court sentenced Gamble to 151 months, to be served consecutively to his 60-month sentence. *See id.* After Gamble had completed his 60-month sentence but before he had completed his 151-month sentence, Gamble moved to reduce his 60-month sentence based on an amendment in the Guidelines that changed the Guideline range for Gamble's crack cocaine conviction. *See id.* at 473-74.

*Gamble* held that Gamble did not qualify for a sentence reduction under § 3582(c)(2). *Id.* at 474-75. The court explained that because the Guidelines did not authorize a sentence reduction below time served, Gamble still must have been serving his cocaine-based 60-month sentence to qualify. *See id.* at 473-74. Because Gamble had already served his cocaine-based sentence, the Eighth Circuit held § 3582(c)(2) did not authorize or require that "the district court

meld the two sentences into a single, aggregate term of imprisonment." *Id.* at 474.

Notably, *Gamble* rejected an analogous argument to the one Chachanko advances here. To address the fact that Gamble sought to reduce his crack cocaine sentence even though he had already served it, Gamble argued that his 60-month sentence and his 151-month sentence should be viewed as an aggregate sentence because it is "impossible to determine which part of either sentence he is currently serving." *Id.* In support, Gamble cited *United States v. Bolin*, 2008 WL 928397, at *1 (S.D. Ohio Apr. 7, 2008), a case with nearly identical circumstances to the one in *Pierce I* (which Chachanko cites here). *See Gamble*, 572 F.3d at 474. In *Bolin*, the district court sentenced the defendant for a crack cocaine offense at the same time it sentenced the defendant for other offenses. *Bolin*, 2008 WL 928397, at *1. Although the defendant in *Bolin* moved only to reduce the cocaine-based sentence and had already served his cocaine-based sentence, the court nevertheless reduced the defendant's cocaine-based sentence. *See id.* at *2-3. Crucially, the defendant in *Bolin* received his sentences at the same time from the same court and the judgment did not specify the order in which the defendant must have served them. *See id.* at *1. Because the original sentencing court has no authority to determine which order consecutive sentences must be served, *Bolin* treated the defendants' sentences as an aggregate sentence. *See id.* at *2.

Addressing Gamble's reliance on *Bolin*, the Eighth Circuit specifically distinguished Gamble's situation from *Bolin*, noting that unlike in *Bolin*, there

was "no mistaking the order of [Gamble's] sentences" because "Gamble was serving his sentence for his crack cocaine conviction at the time he was sentenced for his marijuana and money laundering convictions." *See Gamble*, 572 F.3d at 474. Other courts have similarly observed the distinction between a defendant with two consecutive sentences stemming from the same sentencing proceeding and a defendant with two consecutive sentences arising from two different proceedings. *See, e.g.*, *Vaughn*, 806 F.3d at 644; *Llewlyn*, 879 F.3d at 1297-98; *United States v. Woodard*, 2024 WL 382445, at *7 (W.D. Va. Jan. 31, 2024). For example, the First Circuit noted that in the former case, "[s]imultaneously imposed consecutive sentences often do not make clear in what order the sentences should be served, so fairness concerns may be raised by a denial of a § 3582(c)(2) sentence reduction on the basis that the only eligible part of the total time of imprisonment has already been served." *Vaughn*, 806 F.3d at 644.

The court finds that the logic in *Gamble* and cases in agreement with *Gamble* similarly applies to Chachanko's situation. Here, similar to *Gamble*, there is "no mistaking the order of [Chachanko's] sentences" because the District Court of Montana sentenced Chachanko to 219 months on May 19, 2006, and this court sentenced Chachanko over two years later on November 10, 2008. *See* PSR ¶ 30; Docket 296 at 2. Thus, because Chachanko's aggregate sentence is comprised of two sentences imposed at different times during different proceedings, his situation differs from *Pierce* and the other cases on which Chachanko relies. As a result, the court cannot treat

43

Chachanko's sentence as aggregated for purposes of determining whether he has served ten years of the term of imprisonment that he seeks to reduce.

As a final effort, Chachanko notes that *Gamble* involved a different context and a different sentencing statute. *See* Docket 349 at 1-2. Specifically, Chachanko correctly points out that *Gamble* involved § 3582(c)(2) and U.S.S.G. § 1B1.10, while this instant case deals with § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(6). *See id.* But the statutory context in *Gamble* supports this court's understanding of § 3582(c)(1)(A). Section 3582(c)(2) provides in relevant part:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment[.]

18 U.S.C. § 3582(c)(2). Notably, § 3582(c)(2) includes the identically worded-phrase "the term of imprisonment" compared to § 3582(c)(1)(A) and that the court discussed above. Although *Gamble* did not explicitly conduct a textual analysis of this phrase, *Gamble*'s holding—that the court could not reduce Gamble's 60-month term because he had already served it and that treating his combined 60-month and 151-month sentence was inappropriate—comports with the understanding that § 3582(c)(2)'s language of "the term of imprisonment" generally[6] refers to the specific term that was directly affected

---

[6] The court acknowledges that the outcome in *Bolin* provides an exception to this rule, namely that § 3582(c)(2) may authorize a sentence reduction of a term of imprisonment that the defendant has already served if the defendant is still serving a different sentence imposed by the same court at the same time.

by the subsequent change in guideline range. *See Gamble*, 572 F.3d at 474-75; 18 U.S.C. § 3582(c)(2). If anything, the facts in *Gamble* present a stronger case for aggregation than the facts in Chachanko's, because unlike in Chachanko, the same court sentenced Gamble (at different times). *See Gamble*, 572 F.3d at 473. But in Chachanko's case, two different courts imposed sentences at different times. *See* PSR ¶ 30; Docket 296 at 2. If aggregation was inappropriate based on the facts in *Gamble*, the court holds that aggregation would similarly be inappropriate here.

In short, after considering the statutory and guideline text, structure, and precedent on similar issues, the court concludes that Chachanko cannot show that he has served at least ten years of the term of imprisonment under § 1B1.13(b)(6). Because Chachanko has not served at least ten years of the 300-month term of imprisonment to which this court sentenced him and that he seeks to reduce, Chachanko is ineligible under § 1B1.13(b)(6).[7]

---

*See Bolin*, 2008 WL 928397, at *2-3. But *Gamble* had no occasion to opine on whether it agreed with *Bolin*'s outcome, and instead only distinguished *Bolin* from Gamble's situation. *See Gamble*, 572 F.3d at 474-75. The court similarly need not reach the situation presented in *Bolin*.

[7] For this reason, the court need not address the Government's arguments regarding whether the Commission validly promulgated § 1B1.13(b)(6) or whether § 1B1.13(b)(6) contravenes § 3582(c)(1)(A). *See* Docket 340 at 18-24, 27-28.

### D. Combination

Under § 1B1.13(b), a defendant can prove he faces an extraordinary compelling reason based on any of the enumerated circumstances (such as medical circumstances, family circumstances, rehabilitation) or a *combination* of them. The court has holistically considered Chachanko's medical circumstances, medical circumstances, rehabilitation, and youthful offender status and finds that at this time, Chachanko has not met his burden to justify a sentence reduction.

Having found Chachanko does not qualify for compassionate release under the circumstances set forth in § 1B1.13(b)(1)-(4), any of them in combination, or the circumstance set forth in § 1B1.13(b)(6), it is

ORDERED that Chachanko's motion for relief under the First Step Act (Docket 324) is denied without prejudice.

Dated July 2, 2024.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE